FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 23, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TIM AMAYA,

                Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

No.  4:17-CV-05029-EFS

**ORDER GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION AND DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION**

**CLERK'S OFFICE ACTION REQUIRED**

Before the Court, without oral argument, are the parties' cross-summary-judgment motions. ECF Nos. 13 & 15. Plaintiff Tim Amaya appeals the Administrative Law Judge's (ALJ) denial of benefits. *See* ECF No. 13. Mr. Amaya asks the Court to reverse the ALJ's decision and remand for an evidentiary hearing or the immediate award of benefits. The Commissioner of Social Security (Commissioner) asks the Court to affirm the ALJ's decision. *See* ECF No. 15. The Court has reviewed the administrative record and the parties' briefing and is fully informed. Because the ALJ did not reversibly err, the Court grants the Commissioner's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

///

//

/

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

# I.  Factual Summary[1]

Plaintiff Tim Amaya was born on May 12, 1965, and is 52 years old. ECF No. 9, (AR) 116. His highest level of formal education is at the twelfth grade, and he is able to communicate in English. AR 52. He stands 5'10" tall and weighs approximately 215 pounds. AR 69.

Mr. Amaya has been diagnosed with a number of physical conditions, including lumbar spinal stenosis, lumbar spondylosis, and lumbar radiculopathy. AR 193, 200-01. As a result of these conditions, which exist primarily as a result of an on-the-job injury, he experiences chronic back pain that impacts his daily life. AR 54-58, 163-71. Mr. Amaya resides with his significant other and two children, and he spends his days mostly at home. AR 165-68.

Mr. Amaya has a significant work history as a furniture mover/driver (very heavy work, semi-skilled, DOT Code: 905.688-018), tractor-trailer truck driver (medium work, semi-skilled, DOT Code: 904.383-010), and material handler (heavy work, semi-skilled, DOT Code: 929.687-030). AR 28. Mr. Amaya has not been employed since 2009. AR 43, 126.

# II.  Standard of Review

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence"

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### III. <u>Disability Determination</u>

A claimant is considered "disabled" for the purposes of the Social Security Act if two conditions are satisfied. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

§ 1382c(a)(3)(A). Second, the claimant's impairment must be of such severity that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 1382c(a)(3)(B). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is currently engaged in a substantial gainful activity. *Id.* § 416.920(a)(4)(i). If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If he does not, the disability claim is denied. If he does, the evaluation proceeds to step three.

Step three compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the evaluation proceeds to step four.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by determining the claimant's residual functional capacity (RFC). *Id.* §§ 404.1520(e),

416.920(e). If the claimant is able to perform his previous work, the claimant is not disabled. If the claimant cannot perform this work, the evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If he can, the disability claim is denied. If he cannot, the claim is granted.

The burden of proof shifts during this analysis. The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). At step five, the burden shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

### IV.  **Procedural History and ALJ Findings**

On February 21, 2013, Mr. Amaya filed an application for disability insurance benefits, alleging a disability onset date of December 18, 2009. AR 21. His claim was denied initially and upon reconsideration. Mr. Amaya subsequently requested a hearing before an ALJ, which took place before ALJ Marie Palachuk on June 11, 2015. The ALJ presided over the hearing from Spokane, Washington, while Mr. Amaya appeared pro se by video from Kennewick, Washington. AR 21. Medical expert Darius Ghazi, MD, and vocational expert Daniel R. McKinney, Sr., appeared telephonically. AR 21.

On June 25, 2015, the ALJ issued a decision denying Mr. Amaya's claim. AR 21–29. At step one, the ALJ determined Mr. Amaya did not engage in substantial gainful activity during the relevant period. AR 23. At step two, the ALJ determined Mr. Amaya had the severe impairments of degenerative disc disease of the lumbar spine, status post left ankle fracture with open reduction and internal fixation, and mild obesity. *Id.* At step three, the ALJ determined Mr. Amaya did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.*

At step four, the ALJ determined Mr. Amaya had the RFC to perform light work, except that he may occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes or scaffolds; occasionally perform foot pedals bilaterally; and have no more than moderate exposure to hazards, including walking on uneven ground. AR 24. Accordingly, the ALJ found Mr. Amaya was unable to perform any past relevant work. AR 28.

Finally, at step five, the ALJ determined Mr. Amaya could have performed other jobs existing in significant numbers in the national economy, such as a products assembler (light work, unskilled, DOT Code: 706.687-010), inspector and hand packager (light work, unskilled, DOT Code: 559.687-074), or packing-line worker (light work, unskilled, DOT Code: 753.687-038). AR 28–29. As a result, the ALJ concluded Mr. Amaya was not disabled under sections 216(i) and 223(d) of the Social Security Act at any time from December 18, 2009, the alleged onset date, through December 31, 2014, the date last insured. AR 29.

The Appeals Council denied Mr. Amaya's request for review, AR 1–3, making the ALJ's decision the final agency action for purposes of judicial review. 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210. Mr. Amaya filed this suit on March 10, 2017, appealing the ALJ's decision. ECF No. 1. The parties then filed the present summary-judgment motions. ECF Nos. 13 & 15.

## V.   Discussion

Mr. Amaya contends the ALJ erred because she (1) improperly rejected the opinions of Mr. Amaya's medical providers; (2) improperly discredited Mr. Amaya's subjective symptom testimony; and (3) failed to meet her burden at step five to identify specific jobs, available in significant numbers, that were consistent with Mr. Amaya's specific functional limitations. *See* ECF No. 13 at 5. The Court evaluates each challenge to the ALJ's decision in turn.

## A.   Medical opinions

Mr. Amaya first argues that the ALJ erred by improperly rejecting the opinions of State agency consultant Charles Wolfe, MD, AR 69–76, and physical therapist Rodney Scrimsher, MPT, AR 392–410. ECF No. 13 at 8. The Commissioner responds that the ALJ provided sufficient reasoning in assigning some weight to Dr. Wolfe's opinion and that physical therapists such as Mr. Scrimsher are "other sources" whose opinions may be rejected by germane reasons, which the ALJ gave. ECF No. 15 at 9.

"In disability benefits cases, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability — the claimant's ability to perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation omitted). There

are three types of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* The ALJ must provide "clear and convincing" reasons for rejecting the un-contradicted opinion of a treating examining physician. *Id*.

If the opinion of a treating physician is contradicted by another physician, the ALJ may only reject it if she provides "specific and legitimate reasons" supported by "substantial evidence" in the record. *Id.* In other words, an ALJ errs when she rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion. *Garrison*, 759 F.3d at 1012. *The* ALJ can satisfy the substantial-evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (internal quotations omitted).

1. Charles Wolfe, MD

Dr. Charles Wolfe, a State agency medical consultant who reviewed Mr. Amaya's initial claim, opined that Mr. Amaya "could only lift ten pounds frequently and could only stand or walk for a total of two hours in an eight-hour day, with other postural and environmental limitations." AR 69-75. The ALJ gave Dr. Wolfe's opinion only some weight, explaining that it was "inconsistent with the clear majority of

the medical opinions in the record" and that such a severe activity restriction was not supported by the medical evidence. AR 27.

Mr. Amaya takes issue with the ALJ's reasoning but provides no authority in doing so, only making the conclusory statement that it was not a "valid reason for rejecting the opinion of Dr. Wolfe." ECF No. 13 at 10. The Court disagrees. The opinions of nonexamining physicians may serve as substantial evidence only "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the ALJ correctly identified that Dr. Wolfe's opinion was contradicted by the opinions of examining and treating physicians. For example, examining physicians Toomas Eisler, MD, and Michael Gillespie, MD, determined "there [was] no objective evidence of any pathology that would preclude [Mr. Amaya] from returning to any form of gainful employment he chooses." AR 444. In fact, because the opinion of a nonexamining physician cannot "constitute evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," the ALJ likely would have erred had she given more weight to Dr. Wolfe's opinion. *Lester*, 81 F.3d at 831.

Mr. Amaya further alleges the ALJ erred by "not discuss[ing] a single piece of specific evidence or cit[ing] a specific report that contradict[ed] Dr. Wolfe's opinion." ECF No. 13 at 10. While it is true that the ALJ did not cite to a contradictory report in the paragraph discussing Dr. Wolfe's opinion, she spent nearly four single-spaced pages "setting out a detailed and thorough summary of the facts and conflicting clinical evidence." *See* AR 24–28; *Garrison*, 759 F.3d at

1012. As noted above, the opinions of examining and treating physicians are entitled to greater weight than those of nonexamining physicians. *Lester*, 81 F.3d at 830. Dr. Wolfe's opinion itself is contradicted by that of another State agency consultant and nonexamining physician, Drew Stevick, MD, who reviewed Mr. Amaya's claim on reconsideration only a few months after Dr. Wolfe gave his opinion. *See* AR 26.

Accordingly, the ALJ did not err by discrediting Dr. Wolfe's opinion without listing specific instances of contradiction. She properly found that the opinion was contradicted by the objective medical evidence and the weight of the medical opinions in the record, which she discussed in detail in other areas of her decision. Moreover, even if rejecting Dr. Wolfe's opinion in this manner did constitute error, that error was harmless. *See Molina*, 674 F.3d at 1115.

### 2. Rodney Scrimsher, MPT

The ALJ gave little weight to the opinion of Rodney Scrimsher, MPT[2], that Mr. Amaya "could lift up to forty pounds frequently, that he could walk for no more than two and a half hours each day, and that he could stand for no more than one hour in an eight-hour day. *See* AR 27, 391. The ALJ explained that Mr. Scrimsher "came to his conclusions based on a single examination of the claimant," and that it contradicted "the plethora of opinions from examining and treating physicians" that found less limiting restrictions. AR 27.

---

[2] Mr. Amaya refers to Mr. Scrimsher as both "Dr. Scrimsher" and "Therapist Scrimsher." *See, e.g.*, ECF No. 13 at 9. However, the record indicates Mr. Scrimsher has earned a Master's degree in Physical Therapy and is not a physician. AR 404, 412.

Mr. Amaya argues the ALJ rejected Mr. Scrimsher's opinion improperly and points out that Mr. Scrimsher "performed the most comprehensive work evaluation in the record," which consisted of four hours of physical testing. ECF No. 13 at 9 (citing AR 391, 394–401). He further complains that the ALJ failed to recognize that Mr. Scrimsher performed the evaluation at the recommendation of a treating physician, Michael Turner, MD. AR 192.

Generally, the opinion of a physical therapist is considered a nonmedical "other source" that is entitled to less weight — and less deference — than that of a physician. *Huff v. Astrue*, 275 F. App'x 713, 716 (9th Cir. 2008), SSR 06-03p. Accordingly, although an ALJ must consider such an opinion, she need only give "germane reasons" to discredit it. *Molina*, 674 F.3d at 1111.[3] When considering how much weight to give to "other source" opinions, the Social Security Administration directs ALJs to consider the following: (1) how long the source has known and how frequently the source has seen the claimant; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the claimant's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06-03p.[4]

---

[3] *C.f. Haagenson v. Colvin*, 656 Fed. Appx. 800, 802 (9th Cir. 2016) (holding that ALJ's dismissal of opinions of nurse and counselor solely because they were "other sources" was reversible error).

[4] SSR 06-03p was rescinded effective March 27, 2017. 82 Fed. Reg. 58444 (March 27, 2017). However, it was in effect when the ALJ rendered her decision on June 25, 2015, and it governs the ALJ's consideration of Mr. Amaya's claim. *See* AR 29; 20 C.F.R. § 404.1527(f).

Although the ALJ's reasoning for dismissing Mr. Scrimsher's opinion is somewhat brief, it is sufficiently germane. Further, both reasons articulated by the ALJ — frequency of examinations and consistency with the other evidence — are expressly mentioned in SSR 06-03p as factors the ALJ should consider. As with Dr. Wolfe's opinion, although the paragraph discrediting Mr. Scrimsher's opinion does not detail what medical evidence specifically contradicts it, the ALJ spent a total of nearly four single-spaced pages "setting out a detailed and thorough summary of the facts and conflicting clinical evidence." See AR 24-28; *Garrison*, 759 F.3d at 1012. The ALJ was not required to provide additional reasons for assigning little weight to Mr. Scrimsher's opinion. And even if she erred by not providing additional reasons, that error was harmless.

**B.  Mr. Amaya's subjective symptom testimony**

Mr. Amaya also contends the ALJ erred by improperly rejecting his subjective complaints. ECF No. 13 at 10. The Commissioner responds that the ALJ properly made numerous specific findings to support her credibility determination. ECF No. 15 at 4.

If a claimant's impairment could reasonably be expected to produce the symptoms alleged in the testimony and there is no evidence that a claimant is malingering, an ALJ may only reject a claimant's testimony about the severity of her symptoms by offering "specific, clear, and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). "This is not an easy requirement to meet: '[t]he clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison*, 759 F.3d at 1014 (9th Cir. 2014) (quoting *Moore v.*

*Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "It's not sufficient for the ALJ to make only general findings; [s]he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Examples of legitimate bases to discredit a claimant's testimony include the claimant's "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct," and other "ordinary techniques of credibility evaluation." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989). When reviewing an ALJ's decision, the Court is not a "trier of fact"; issues of fact are to be decided by the ALJ. *Fair*, 885 F.2d at 604. Indeed, the Court of Appeals for the Ninth Circuit has explained that "credibility determinations are the province of the ALJ." *Id*.

Here, the ALJ found Mr. Amaya's impairments could reasonably be expected to cause the alleged symptoms. AR 25. Although the ALJ believed he had been "honest and forthright," she found that his testimony concerning the symptoms' intensity, persistence, and limiting effects were only partially credible for four reasons: (1) "his admitted activities of cleaning and yard work show that he is not at a level of impairment that would prevent him from working"; (2) "the objective medical evidence shows an impairment that, while severe, is not disabling"; (3) "[m]ost importantly, the opinions of a number of medical sources who found that the claimant's condition ha[d] become stable, and that he would be able to return to work in some capacity"; and (4)

"there is evidence in the record that some of the claimant's reported pain may come from psychological factors . . . ." AR 25.

As to the first reason, the Court acknowledges that the Ninth Circuit has repeatedly cautioned ALJs from failing to distinguish between the activities of daily living and activities of full-time employment. *See Garrison*, 759 F.3d at 1014, 1016 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . ." (citation omitted)). Indeed, a claimant's testimony may only be discredited for this reason if his activity level is inconsistent with his claimed limitations. *Id*. at 1016. Here, the ALJ discredited Mr. Amaya's testimony in part because of his "admitted activities of cleaning and yard work." AR 25. However, the record indicates these activities are consistent with his claimed limitations. Mr. Amaya admitted to wiping counter tops, using a riding lawn mower — because he can no longer push a manual mower — and spraying weeds. AR 166. He alleged it takes him around 20 minutes to mow his front and back yard and about 10 minutes to spray for weeds, after which he must rest his back and ankle for 20-30 minutes. AR 166. Accordingly, the ALJ erred by citing Mr. Amaya's activities as a reason for rejecting his subjective complaints. *See Garrison*, 759 F.3d at 1016 (holding claimant's admitted activities — with heavy assistance — of doing laundry, pickup daughter, and carrying bags did not warrant discrediting her testimony).

As to the second reason, the Court agrees with Mr. Amaya that a general reference to the objective medical evidence is insufficient to reject his testimony. *See Dodrill*, 12 F.3d at 918. However, the ALJ

spent the next two paragraphs discussing the objective medical evidence of both his back and ankle impairments in detail. *See* AR 25. This discussion is hardly the "hackneyed language" or "vague allegation" criticized by the Court of Appeals — it is a detailed and thoughtful review of the record. *See Treichler v. Comm'r of Soc. Sec. Admin*, 775 F.3d 1090, 1103 (9th Cir. 2014). Accordingly, the ALJ did not err by rejecting his testimony for this reason.

As to the third reason, although the ALJ did not name the providers of the medical opinions that she asserted undermined Mr. Amaya's complaints, she referenced them by the content of their opinions: "the opinions of a number of medical sources who found that the claimant's condition ha[d] become stable, and that he would be able to return to work in some capacity." AR 25. Given the ALJ's subsequent, lengthy discussion of the various medical opinions in the record, it is apparent that the ALJ was referring to the numerous medical opinions that indicated Mr. Amaya's condition was stable and that he was able to work. Multiple treating and examining physicians expressed this opinion, including William Stump, MD; Chester McLaughlin, MD; Toomas Eisler, MD; Michael Gillespie, MD; and Wing Chau, MD. AR 26–27.[5] Accordingly, the ALJ did not err by rejecting Mr. Amaya's testimony for this reason.

---

[5] The ALJ discussed these and other opinions in detail. Drs. Stump and McLaughlin both opined, after examining Mr. Amaya, that his condition was "fixed and stable" and that he was able "capable of returning to work without restrictions." AR 26 (citing AR 315–62). Drs. Eisler and Gillespie opined, after examining Mr. Amaya, that "there [was] no objective evidence of any pathology that would preclude him from returning to any form of gainful employment he chooses." AR 26 (citing AR 444). Dr. Chau, after examining Mr. Amaya, opined that he could return to work after five days. AR 27 (citing AR 294).

As to the fourth reason, a physician's report that an injury was "likely amplified by psychological factors" could certainly cause the ALJ to doubt that a claimant's impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ had already determined that Mr. Amaya's impairments could have reasonably caused the alleged symptoms when she gave this reason for rejecting his testimony. AR 25. Because she had already made this determination, it is largely irrelevant whether his pain was also amplified by psychological factors. Further, the ALJ expressly acknowledged that Mr. Amaya had been honest and forthright about his perception of his symptoms. *Id*. Accordingly, the ALJ erred by rejecting Mr. Amaya's testimony for this reason.

Although the ALJ erred by citing Mr. Amaya's daily activities and the possibility that his pain was amplified by psychological factors as reasons for discrediting his subjective symptom testimony, that error was harmless because of the other sufficiently clear and convincing reasons stated by the ALJ. *See Molina*, 674 F.3d at 1115 (explaining an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

**C.    Step five**

Finally, Mr. Amaya argues the ALJ "failed to meet her burden at step five to identify specific jobs, available in significant numbers, consistent with Mr. Amaya's specific functional limitations." ECF No. 13 at 14. Because the ALJ improperly weighed the opinions of Dr. Wolfe and Mr. Scrimsher, Mr. Amaya argues, her hypothetical questions to the vocational expert were incomplete and thus in error. Mr. Amaya also argues the ALJ failed to account for the side effects of Mr. Amaya's

medications, including hydrocodone, amrix, trazodone, and naproxen. ECF No. 13 at 15 (citing AR 171).

The Court disagrees. Because the ALJ properly weighed Dr. Wolfe's and Mr. Scrimsher's opinions, her hypothetical questions to the vocational expert considered all of Mr. Amaya's limitations. Therefore, the vocational expert's testimony retains its evidentiary value. *See DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citation omitted). Further, Mr. Amaya has provided no authority to support his contention that his side effects are relevant to the ALJ's questioning of the vocational expert or that the side effects caused an impairment that the ALJ should have considered. Accordingly, the ALJ did not err in this regard.

**D.    Credit-as-true rule**

Mr. Amaya requests that the Court remand to the Commissioner for an immediate award of benefits. ECF No. 13 at 15-16; *see also Garrison*, 759 F.3d at 1020 (9th Cir. 2014). However, because the Court holds that the ALJ did not reversibly err, this request is denied.

## VI.    Conclusion

In summary, the Court holds the ALJ did not err in evaluating the opinions of Dr. Wolfe or Mr. Scrimsher, did not reversibly err in discrediting Mr. Amaya's subjective symptom testimony, and did not err in her questioning of the vocational expert.

////

///

//

/

Accordingly, **IT IS HEREBY ORDERED**:

**1.** Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

**2.** The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

**3.** The Clerk's Office is directed to enter **JUDGMENT** in favor of Defendant.

**4.** The case shall be **CLOSED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this ___23rd___ day of March 2018.


_____s/Edward F. Shea_____
EDWARD F. SHEA
Senior United States District Judge